IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VICTOR TSUPKO d/b/a VICTORY MOTORS INC., *et al.*, | ) ) ) |
| Plaintiffs/Cross Defendants,[1] | ) ) |
| v. | )   Civil Action No. 1:24-cv-360 (RDA/LRV) |
| | ) |
| WESTLAKE FLOORING CO., LLC, d/b/a WESTLAKE FLOORING SERVICES, | ) ) ) |
| Defendant/Cross Claimant. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the Defendant Westlake Flooring Company, LLC d/b/a Westlake Flooring Services' Renewed Motion for Summary Judgment. Dkt. 69 (the "Motion"). This matter has been fully briefed and is now ripe for disposition. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). Considering the Motion together with the Memorandum in Support (Dkt. 69-1), Plaintiffs' Opposition (Dkt. 71), and Defendant's Reply (Dkt. 73), this Court GRANTS the Motion for the reasons that follow.

### I.   PROCEDURAL BACKGROUND

Plaintiff Victory Motors, Inc. filed a Complaint *pro se* through its owner on March 6, 2024. Dkt. 1. Victory Motors asserted that Defendant: (i) improperly repossessed vehicles;

---

[1] As this Court has previously noted, because the Complaint was filed *pro se* originally, it was filed by Victor Tsupko on behalf of Victory Motors. This was an inappropriate designation because a corporation cannot proceed *pro se*. Nonetheless, the Complaint makes clear that both Tsupko *and* Victory Motors are Plaintiffs. Dkt. 1 at 1 ("Victor Tsupko is the plaintiff in this case . . . . Victory Motors is *also* a Plaintiff . . . ."). The counterclaims are also asserted against both Tsupko and Victory Motors. Dkt. 10.

(ii) improperly accelerated contract payments; (iii) made unauthorized charges; (iv) breached the implied covenant of good faith and fair dealing; (v) made threats and engaged in harassment; and (vi) breached the contract. *Id.* On May 8, 2024, Defendant filed its Answer and Counterclaim. Dkt. 10. Defendant asserts the following claims: (i) breach of contract against Victory Motors; (ii) breach of contract against Victor Tsupko ("Tsupko"); (iii) tortious interference with contract against Tsupko; and (iv) replevin against Victory Motors. *Id.*

On May 9, 2024, the Court issued an Order advising Victory Motors that it could not appear *pro se*. Dkt. 11. The Court also issued a Scheduling Order. Dkt. 12. On May 21, 2024, Victory Motors filed a motion seeking an extension of the deadline to obtain counsel. Dkt. 13. That motion was granted. Dkt. 15. On May 29, 2024, Victory Motors and Tsupko, now represented by counsel, filed a Verified Answer to the Counterclaim. Dkt. 18. That same day, U.S. Magistrate Judge Lindsey R. Vaala held the initial pretrial conference and issued the Rule 16(b) Scheduling Order. Dkts. 19, 20. On September 13, 2024, the parties filed a motion to amend the scheduling order that was subsequently granted by Judge Vaala. Dkts. 24, 25.

On November 8, 2024, the parties filed cross-motions for summary judgment. Dkts. 38, 40. On August 13, 2025, the Court issued a Memorandum Opinion and Order granting-in-part and denying-in-part both motions. Dkt. 57. In relevant part, the Court: (i) granted Plaintiffs' motion with respect to Westlake's tortious interference and replevin counterclaims, but otherwise denied the motion; and (ii) granted Westlake's motion with respect to liability on its breach of contract claims. *Id.* The Court determined, however, that Westlake had not sufficiently established the amount of its damages and therefore directed the parties to attend a settlement conference and, if it was unsuccessful, for Westlake to renew its motion for summary judgment.

On December 23, 2025, Westlake filed the pending Motion. Dkt. 69. On January 16, 2026, Plaintiffs filed their Opposition. Dkt. 71. On January 22, 2026, Westlake filed its Reply. Dkt. 73.

## II.    UNDISPUTED STATEMENT OF FACTS

Before analyzing the Motion at issue here, the Court must first determine the undisputed summary judgment record, as summary judgment is only appropriate where there are no genuine disputes of material fact. Here, in compliance with the Rules of Civil Procedure and the Local Rules, Westlake set forth its statement of undisputed facts in enumerated paragraphs. Plaintiffs, however, have failed to comply with the requirement that they respond to each disputed fact with citations to relevant evidence. Dkt. 20 ¶ 14(f) ("A brief in opposition to a motion for summary judgment must include a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record."). Here, Plaintiffs' Opposition consists of a mere two sentences which fail to cite to any evidence. *See, e.g., JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is properly deemed admitted where brief in opposition fails to "identify with any specificity which facts, if any, were disputed") (citing Local Civ. R. 56(B)); *Hayes v. Sotera Defense Solutions, Inc.*, 2016 WL 2827515, at *2 (E.D. Va. May 12, 2016) ("Any facts listed in the moving party's listing of material facts which are not specifically controverted in the non-moving party's statement of facts in opposition to the motion will be deemed to be admitted for purposes of [a] motion for summary judgment.") (citing Local Civ. R. 56(B)); *Ferguson v. Holder*, 2015 WL 11117148, at *1 (E.D. Va. Feb. 9, 2015) (movant's statement of undisputed facts is "appropriately deemed admitted and governs th[e summary judgment] record" where non-movant fails to comply with Scheduling Order's provision regarding

3

statement of facts).   The Court has reviewed the parties' submissions, as well as its prior determination of undisputed facts from the Memorandum Opinion and Order, and determined that the following facts are undisputed:

1. Westlake is a company that, among other functions, provides financing to auto dealerships to allow them to purchase inventory.

2. In September 2014, Victory Motors began selling vehicles it had purchased using funds that Westlake provided.

3. In connection with this arrangement, a "suspense" account was established for Victory Motors which would hold excess funds tendered by Westlake by Victory Motors.

4. In January 2017, Westlake implemented a new dealer management system.  Prior to implementing that system, Victory Motors was not required to pay any reserve amount when it sold a vehicle that it had purchased using Westlake's funds.

5. In connection with its new system, a "reserve" account was established for Victory Motors which would hold funds that Victory Motors deposited with Westlake to be used as additional security for any amounts that Victory Motors owed to Westlake.

6. When Westlake implemented its new system, Victory Motors had a balance of $11.31 in its suspense account, which was subsequently deposited into Victory Motors' reserve account.

7. On October 26, 2018, Victory Motors entered into an amended Promissory Note and Loan and Security Agreement (the "PNLSA") with Westlake.

8. The PNLSA requires Victory Motors to "pay all Liabilities, without notice on or before the Maturity Date."

9. Victory Motors also agreed that the PNLSA was "subject to all applicable fees published in the Fees and Rates Schedule."

10. In addition, Victory Motors agreed to pay to Westlake:

[A]ll reasonable legal fees, expenses, and collection costs, including, but not limited to, repossession and spotters incurred by [Westlake], [Westlake's Affiliates], and/or [Westlake's] Representatives as a result of any Event of Default, [Victory Motor's] failure to perform any obligation or satisfy any Liability under th[e PNLSA] or any other Loan Document, and/or [Victory Motor's] unsuccessful prosecution of affirmative claims or counterclaims against such party or parties.

11. Under the PNLSA,

All outstanding Liabilities relating to an Advance shall accrue Interest on a per annum basis from the Floorplan Date, based upon a 360-day year, and such Interest shall be compounded daily at the Base Rate, plus the Contract Rate, in each case as stated on the applicable Fees and Rate Schedule, until such outstanding Liabilities are paid in full.

12. Liabilities is defined to mean:

[A]ny and all Advances, debts, financial obligations, Administrative Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorney's fees, costs of collection, covenants, and duties owing, arising, due, or payable from Borrower to Lender of any kind or nature, present, or future, under any instrument, guaranty, or other document, whether arising under this Note, any other Loan Document, or otherwise, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing, or hereafter arising, and however acquired.

13. "Advance" is defined to mean "any discretionary loan or payment in any amount, for any purpose, made pursuant to this Note by [Westlake] to [Victory Motors] or on [Victory Motors'] on behalf to any third party.

14. "Interest" is defined to mean "the aggregate rate of interest which accrues on all Liabilities owed by [Victory Motors] to [Westlake] under or arising out of this Note or the other Loan Documents.

15. "Floorplan Date" is defined to mean "(a) for an Auction Purchase, the sale date regardless of the date the Floorplan Advance is actually requested or funded; and (b) for a Third Party Purchase, the date the request for the Floorplan Advance is required by [Westlake], regardless of the date such Floorplan Advance is actually funded."

16. The "Base Rate" is defined to mean:

[T]he greater of (a) the 'Prime Rate' published in The Wall Street Journal on the date(s) noted below (in the event no such rate is published in The Wall Street Journal on such date(s), the Base Rate shall be the 'Prime Rate' published therein for the most recent business day preceding the last business day of such month on which such rate was published) or, in the event The Wall Street Journal does not quote a 'Prime Rate,' the rate quoted as the 'Prime Rate' in a publication as Lender may, from time to time, hereinafter designate in writing), and (b) that fixed rate of interest as stated in the Fees and Rates Scheduled.

17. The "Contract Rate" means "that rate of interest as stated on the applicable Fees and Rates Schedule."

18. "Fees and Rates Schedule" is defined as:

[T]hat current schedule of fees and rates applicable to the Note and the other Loan Documents posted on the Westlake Portal, or otherwise communicated to [Victory Motors] in writing, which [Westlake] may amend or modify in its sole discretion from time to time, and without notice other than posting any updates to the Fees and Rates Schedule on the Westlake Portal, or otherwise communicated to [Victory Motors] in writing, including, but not limited to, any defined fees or rates in this Note and the other Loan Documents, the Advance Schedule, the Insurance Requirements, fees for the Inventory Protection Program, any applicable marketing or promotional terms for each Finance Program applicable to [Victory Motors'] Credit Line.

19. The Fees and Rates Schedule is attached to the PNLSA. Per the Fees and Rates Schedule, the Contract Rate is 4.5% and the Base Rate is 5.75% as of June 22, 2018. *See* Dkt. 44-2 at 16.

20. Also per the Fees and Rates Schedule, Victory Motors agreed to pay an Administrative Fee of $15.00 per vehicle, a Late Fee of $75.00 per delinquent Advance, an "NSF Fee" of $100, an Overline Fee of 2% of the amount in excess of Advance Availability, a Highline Fee of $150.00 per Vehicle Advance in excess of $25,000.00, an Outside Flooring Fee of $60.00 per vehicle, and an Extension Fee of $150 plus any Term Fee. Dkt. 44-2 at 16.

21. Per the PNLSA, Victory Motors agreed that its "account is subject to 'NSF' fees in the amount stated in the Fees and Rates Schedule . . . for each check or ACH issued by [Victory Motors] which is subsequently returned for insufficient funds."

22. Victory Motors further agreed that its "account is subject to a late fee in the amount stated in the Fees and Rates Schedule . . .  for any Unit of Lender Financed Inventory for which [Victory Motors] fails to remit payment under the [PNLSA] when due."

23. Victory Motors also agreed that its "accounts is subject to Administrative Fees, as stated in the Fees and Rates Schedule" and that Victory Motors "acknowledges and agrees that any such Administrative Fees charged by [Westlake] is permitted under the [PNLSA], and [Victory Motors] consents to the assessment of any such Administrative Fees to [Victory Motors'] account."

24. Although the PNLSA allowed Westlake to charge interest on any Liabilities, Westlake calculated interest using only the principal balance (as opposed to calculating interest on the other fees and interest Westlake was entitled to charge) for a vehicle as an accommodation to Victory Motors.

25. In sum, the outstanding balance Victory Motors owed to Westlake can be expressed as:

   a. <u>Principal and Interest</u> (current Principal * current daily Interest Rate * days since purchase or since last Principal payment) PLUS

b. <u>Applicable Fees</u> (e.g., Administrative Fee, Term Fees, Late Fees, Late Floor Fee, Highline Fee, Overline Fee, and/or NSF Fee) MINUS

c. <u>Any payments</u> (including application of the suspense and reserve account balances)

26. Also on October 26, 2018, Tsupko entered an individual and personal guaranty of Victory Motors' obligations to Westlake under the PNLSA (the "Guaranty"). Dkt. 44-1 at 48-50 and Dkt. 44-2 at 1-7.

27. Under the Guaranty, Tsupko agreed:

[T]o pay all expenses, including attorneys' fees and court cost (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or any Guarantor related to any of the Liabilities, plus interest on such amounts at the lesser of (A) fifteen percent (15%) per annum, compounded daily, or (B) the maximum rate permitted by Law. Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable upon demand.

28. Westlake has been registered as a licensed finance lender in California since June 7, 2012.

29. As part of its agreement with Westlake, Victory Motors was required to pay $100 into its reserve account for each vehicle that it purchased and sold using Westlake's funds.

30. Between June 2017 and February 2024, Victory Motors "floored" (listed for sale at its dealership) 681 vehicles that it purchased using funds that Westlake provided. Of those vehicles, nine units had payments from auction proceeds, reserve funds, or suspense funds. However, Victory Motors only paid a reserve fee for one of those nine units. The reserve fee for this one vehicle, combined with the reserve fees paid for the remaining 672 vehicles, resulted in the accumulation of $67,300.00 in Victory Motors' reserve account between January 2017 and February 2024. In 2017, Westlake also moved $11.31 from Victory Motors' suspense account to the reserve account when Westlake implemented its new dealer management system. Accordingly, as of November 1, 2024, the total balance in Victory Motors' reserve account was $67,311.31.

31. When Westlake repossessed a vehicle from Victory Motors and the subsequent sale resulted in more funds than were needed to satisfy the outstanding balance for that specific vehicle, Westlake would place the funds into Victory Motors' suspense account. Of the five vehicles that Westlake was able to recover from Victory Motors and sell at auction, only two of those sales resulted in funds sufficient to satisfy the outstanding balance owed to Westlake. In particular, the sale of the 2019 Honda Civic, VIN 2HGFC2F69KH546174 resulted in a surplus of $3,154.95, and the sale of the 2018 Audi Q7 PRM +, VIN WA1LAAF72JD036572 resulted in a

7

surplus of $1,991.42. Accordingly, as of November 1, 2024, the balance of Victory Motors' suspense account was $5,146.37.

32. On December 3, 2024, Westlake applied the balance of the reserve and suspense accounts to the outstanding balance owed on Victory Motors' account.

33. Victory Motors was in default under the PNLSA as of February 21, 2024.

34. As of the date of the submission of the Motion, Victory Motors owes Westlake $432,221.83 which is comprised of the outstanding balance for the loan funds plus accrued interest through May 31, 2024, plus applicable fees, less the application of the funds in Victory Motors' reserve and suspense accounts.

35. In addition, Westlake has incurred $240,822.50 in fees and $10,978.30 in costs in this action through November 2025. Under the Guaranty, Tsupko is liable for those fees and costs plus interest, which begins accumulating as of the date of payment by Westlake. This figure is $41,230.65.

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

The standard of review does not change when ruling on cross-motions for summary judgment. *E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 516 F. Supp. 2d 588, 593 (E.D. Va. 2007). When faced with cross-motions for summary judgment, a court must review each motion separately on its own merits to determine whether either of the parties deserves

8

judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted).

## IV.   ANALYSIS

This Court previously determined that Westlake had established liability as to its breach of contract claims against Victory Motors and Tsupko. As recited in the prior Memorandum Opinion and Order, Westlake provided Plaintiffs with credit, which Plaintiffs used to purchase vehicles. Plaintiffs then sold those same vehicles and failed to repay Westlake. By failing to repay Westlake, Plaintiffs breached the PNLSA and the Guaranty. Dkt. 57. Westlake has now established damages of $684,022.63 as to Victory Motors (consisting of the outstanding balance of the loans, accrued interest, fees, and costs, less the application of the reserve and suspense accounts) and $725,253.28 as to Tsupko (constating of the $684,022.63 plus $41,230.65 in additional interest). Plaintiffs do not raise any specific challenges to the calculation of any of the damages, which Westlake has supported by the Declaration of Jonathan Zhan and other documentation. *See JDS Uniphase Corp.*, 473 F. Supp. 2d at 707 (movant's statement of undisputed facts is properly deemed admitted where brief in opposition fails to "identify with any specificity which facts, if any, were disputed"). Although Plaintiffs challenge the competency of the evidence submitted, Plaintiffs do so in such a general manner that their challenge is meaningless. *See Hicks v. City of Kinston*, 2022 WL 3951359, at * 7 (E.D.N.C. Aug. 31, 2022) (granting motion for summary judgment because nonmovant "fail[ed] to identify with any particularity the specific instances of inadmissible hearsay he takes issue with or where defendants rely upon those specific instances"). Accordingly, because Westlake has appropriately established its entitlement to damages, the Motion will be granted.

V.    CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion (Dkt. 69) is GRANTED; and it is

FURTHER ORDERED that the Clerk is DIRECTED to enter Rule 58 judgment in favor of Plaintiffs and against Defendant on Defendant's Counts III and IV of the Counterclaim (Dkt. 10); and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment on behalf of Defendant and against Plaintiffs on all Counts of the Complaint (Dkt. 1); and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment in favor of Defendant and against Plaintiff Victory Motors on Count I of the Counterclaim in the amount of $684,022.63 plus post-judgment interest at a rate of 10% pursuant to Cal. Code Civ. Proc. § 685.010(a)(1); and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment in favor of Defendant and against Plaintiff Victor Tsupko on Count II of the Counterclaim in the amount of $725,253.28; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
July 24 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge

10